Joseph **WILKINSON** and Donna L. Tweedie, as Successor Co-Trustees of the Nelvada Dean Trust, Respondents,

v.

**NATIVE AMERICAN RIGHTS FUND, et al., Appellants.**

**WD 80393**

Missouri Court of Appeals, Western District.

OPINION FILED: NOVEMBER 21, 2017

Robert H. Schnieders, Oak Grove, MO, Counsel for Respondents.

Michelle M. Burge, Overland Park, KS, Counsel for Appellants.

Before Division Two: Anthony Rex Gabbert, Presiding Judge, Thomas H. Newton, Judge, and Gary D. Witt, Judge

Anthony Rex Gabbert, Judge

Native American Rights Fund, et al. ("Appellants") appeal a trial court's entry of summary judgment in favor of Joseph Wilkinson and Donna L. Tweedie ("Respondents"), who are the successor co-trustees of the Nelvada Dean Trust ("Trust"). Appellants raise two points on appeal. Both points contend the court erred, because it relied on extrinsic evidence to interpret an unambiguous trust provision. We affirm.

### Background

The Trust owns a 300-acre tract of land. Following the death of Nelvada Dean ("Trustor") on December 9, 2012, Respondents hired a land surveyor to except out of the 300 acres a rectangular tract ("Rectangle") containing Native American mounds and other sacred sites, per the amended trust document. Respondents offered to deed the Rectangle to Appellants, but Appellants refused, insisting on an archaeological survey of the 300 acres to

determine whether additional Native American sites exist.

On March 16, 2016, Respondents filed a petition for declaratory judgment, alleging the Rectangle satisfied the Trust's bequest. Appellants filed an answer and three counterclaims to Respondents' petition. Appellants' answer argued Trustor never intended to restrict the Rectangle to sites known to Trustor. Appellants' counterclaims argued for declaratory judgment (requiring an archaeological survey), removal of successor co-trustees, and attorney fees. The parties then executed a joint stipulation of material facts. Among those stipulations was the identification of several mounds and other sites Trustor believed to be Native American. The parties later filed individual motions for summary judgment on the petition and counterclaims.

On November 29, 2016, the court granted Respondents' and denied Appellants' motions for summary judgment. The court concluded, "[t]he trust document does not direct the Trustee ... to locate any additional Native American mounds or sacred sites ... it was the intent of the Trustor to direct the Trustee to obtain a land survey which would allow the transfer of a rectangular shaped section of land containing Native American sites that she was aware of." We affirm.

## Point I

■ Appellants first argue the trial court erred in granting summary judgment on the declaratory judgment action, because the court relied on extrinsic evidence to interpret a trust provision both parties agree is unambiguous. In reviewing a declaratory judgment action decided by summary judgment, our Supreme Court has stated:

> The propriety of a grant of summary judgment is an issue of law that this Court reviews de novo ... This Court

reviews the record in the light most favorable to the party against whom judgment was entered. Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Because this case concerns declaratory judgment, the trial court's decision will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.

*American Federation of Teachers v. Ledbetter*, 387 S.W.3d 360, 362-63 (Mo. banc 2012) (citations omitted). We conclude the trial court did not erroneously rely on extrinsic evidence in determining Trustor's intent.

At issue is Article 3.1(b) of the trust document's Fifth Amendment, which reads:

> ... the trustee shall have the real estate legally described above surveyed to except out ... all land that contains a Native American mound and/or other Native American sacred sites. The excepted piece of land shall be surveyed so that the boundaries can be legally described for said piece of land. The newly surveyed land shall be in the shape of a rectangle so as to contain all Native American Mounds and/or other Native American sacred sites.

Appellants contend the required survey must be an *archaeological* survey, by which they mean an "archaeological exploration." They conclude it cannot be, as the court determined, a topographic *land* survey. In support, Appellants focus on the provision's use of the word "all." Because "all" refers to all land containing Native American sites, Appellants argue, the word "survey" must refer to an archaeological survey, as such a survey would unearth any and "all" undiscovered sites. Accord-

ing to Appellants, Respondents' conclusion that "all" only refers to sites *known to Trustor* would require extrinsic evidence, because what Trustor knew lies beyond the four corners of the trust document. We find no support for this interpretation.

■ "Unless the context of a will or trust indicates a different meaning of a word, the word will be interpreted according to its plain, ordinary meaning." *Blue Ridge Bank and Trust Co. v. McFall*, 207 S.W.3d 149, 157 (Mo. App. 2006). "Under traditional rules of construction, the word's dictionary definition supplies its plain and ordinary meaning." *Hoffman v. Van Pak Corp.*, 16 S.W.3d 684, 688 (Mo. App. 2000) (citation omitted). *Webster's Third New International Dictionary* 2302 (Unabridged 1993) defines the verb "to survey" as "to determine and delineate the form, extent, and position of (as a tract of land, a coast, or a harbor) by taking linear and angular measurements and by applying the principles of geometry and trigonometry." Thus, the corresponding noun refers to "the process of surveying an area of land or water: the operation of finding and delineating the contour, dimensions, and position of any part of the earth's surface, whether land or water." *Id.*

Article 3.1(b)'s plain meaning and context do not support Appellants' theory that "survey" refers to "archaeological exploration." Nothing in the definition of "survey" conveys exploration. The determination and delineation of form conveyed by the verb accords with the trust document's goal of establishing legal boundaries. The taking of "linear and angular measurements" and application of geometric principles accords with the instructions to create a rectangular tract. The noun "survey" applies specifically to *sur-*

*face* descriptions and not, as Appellants envision, archaeological subsurface activity.[1] Appellants' interpretation of "survey" as an "exploration" is thus at odds with the purely descriptive and delineative connotation conveyed by the word's definition.

Taken together with the meaning of "survey" and the general context of Article 3.1(b), the word "all" can only refer to the sites with which Trustor was familiar. If "all" encompassed unknown subsurface Native American sites, it would contradict the clear meaning of "survey" described above. Further, Appellants' interpretation could theoretically disenfranchise some of the Trust's intended beneficiaries. That is, if "all" were extended to include all unexcavated and undiscovered sites, then it is possible the entire 300-acre tract could be conveyed to the Native American Rights Fund. This outcome is clearly not the Trust's intent, since the Rectangle must be *excepted out of* the larger tract, and there are other beneficiaries. Thus, the trial court did not rely on extrinsic evidence in concluding that "survey" refers to a land survey and "all" refers to the Native American sites with which Trustor was familiar. These interpretations inhere in the plain and ordinary meaning of the words, as those words are understood together and in context. Point I is denied.

### Point II

Appellants next argue the trial court erred, because its entry of summary judgment was based on an extrinsic, unstipulated fact, in that the court unnecessarily read limitations into the word "all." Since Point I is dispositive of this argument, Point II is also denied.

---

1. While not all archaeological surveys involve subsurface activity, the proposed archaeological survey cited by Appellants specifically re-

fers to "subsurface testing (shovel tests) regardless of surface visibility." See Appellants' Exhibit A.

## Conclusion

We therefore conclude the trial court did not err in granting Respondents' motion for summary judgment, because it based its interpretation of the unambiguous trust provision at issue on the provision's plain and ordinary meaning.

All concur.